IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MILTON EUGENE INGRAM,

                        Plaintiff,

    v.

DAVID CASSIDY and MATTHEW MARSKE,

                        Defendants.[1]

OPINION and ORDER

19-cv-430-jdp

---

Pro se plaintiff Milton Eugene Ingram, a prisoner in the custody of the Bureau of Prisons (BOP), is proceeding on Eighth Amendment medical care claims. He alleges that officials at the Federal Correctional Institution in Oxford, Wisconsin (FCI-Oxford) refused to fill his prescription for a medication he needed while recovering from surgery.

Two motions are before the court. Defendants move for summary judgment based on Ingram's failure to exhaust his administrative remedies. Dkt. 35. Ingram asks me to order defendants to grant him access to his jailhouse lawyer, with whom Ingram hasn't been able to work because of restrictions that FCI-Oxford has imposed in response to the COVID-19 pandemic. Dkt. 43.

The evidence shows that Ingram failed to exhaust his administrative remedies, which is a prerequisite to suit under the Prison Litigation Reform Act. Ingram filed a series of grievances about the matter, but his appeal of the warden's denial was not timely received by the BOP. Ingram had two opportunities to explain the untimely filing, but he failed to do so. I will grant

---

[1] I have updated the caption to reflect defendants' names as indicated in their submissions.

defendants' motion and dismiss the case. Ingram's motion for access to his jailhouse lawyer will be denied as moot.

BACKGROUND

The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust all available administrative remedies before challenging conditions of confinement in federal court. 42 U.S.C. § 1997e(a). The purpose of this requirement is not to protect defendants but to give prison officials an opportunity to resolve complaints without judicial intervention. *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 537 (7th Cir. 1999) (exhaustion serves purposes of "narrow[ing] a dispute [and] avoid[ing] the need for litigation"). Failure to exhaust administrative remedies under § 1997e(a) is an affirmative defense that must be proven by the defendants. *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018).

Administrative exhaustion requires "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issue on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (citation omitted). This means that a prisoner needs to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Any lawsuit that a prisoner files "before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits . . . ." *Perez*, 182 F.3d at 535.

A. **FCI-Oxford's administrative grievance procedures**

To exhaust administrative remedies at FCI-Oxford, prisoners must follow the multi-tiered grievance procedure set forth in 28 C.F.R. §§ 542.10–19, along with certain institution-specific supplemental procedures. *See* Dkt. 37-1 (FCI-Oxford institutional supplement). A

prisoner must first present the issue informally to prison staff to see if it can be resolved. 28 C.F.R. § 542.13. At FCI-Oxford, this means raising the issue with the prisoner's counselor and completing an informal resolution form, called a BP-8. Dkt. 37-1, at 2. If that doesn't resolve the issue, the prisoner submits a written complaint, called a BP-9, to the warden. The deadline for completing these two steps is 20 calendar days from the date on which the incident giving rise to the issue occurred. 28 C.F.R. § 542.14(a). BOP regulations deem a form "filed" on the date it is received and logged in BOP's computer system. *Id.* § 542.18. Once filed, the warden has 20 calendar days to respond. *Id.*

If the prisoner is dissatisfied with the warden's response, he has 20 days from the date of that response to appeal to the regional director by filing a BP-10 form to the appropriate regional director. *Id.* § 542.15(a). If the prisoner is dissatisfied with the regional director's response, he may then submit a BP-11 form to the general counsel. *Id.* § 542.15(a). Appealing to the general counsel constitutes the "final administrative appeal," *id.*, at which point the prisoner will have exhausted his administrative remedies.

**B. Ingram's complaint-filing history**

In this case, Ingram asserts that defendants violated his Eighth Amendment rights by refusing to fill a prescription for stool softener, which was issued to him by his knee surgeon on July 26, 2018. Under institution policy, prisoners with money in their commissary accounts must purchase over-the-counter medications, including stool softener, from the commissary. But Ingram needed the medication starting on a Thursday, and the commissary wasn't scheduled to open again until Tuesday. Ingram says that as a result of being denied the stool softener, he developed a testicular hernia that eventually required surgery.

3

According to FCI-Oxford's records, on August 30, 2018, Ingram filed a BP-9 form alleging improper medical care after surgery. Although it appears that Ingram submitted for form after the 20-day deadline, the prison did not raise that issue. Instead, the prison rejected it because Ingram had incorrectly submitted it as a "sensitive issue," which is a designation reserved for issues that an inmate reasonably believes would put his safety or well-being at risk if the issue were to become known to the institution. On September 17, 2018, Ingram resubmitted his complaint, this time without designating it as sensitive. The prison rejected it again, this time because Ingram had submitted it before trying to informally resolve his complaint by completing a BP-8. The rejection instructed Ingram that he could resubmit the complaint with a completed BP-8 form within five days.

Rather than resubmitting, Ingram filed a new BP-9, complaining that the prison's refusal to provide him with prescribed medication had caused him to develop a serious new injury. *See* Dkt. 37-3, at 1. He did not say anything about being unable to purchase the medication due to the commissary being closed. FCI-Oxford received this complaint on September 20, 2018. It rejected it that same day, this time on the grounds that Ingram had again failed to complete a BP-8 form and had failed to submit the BP-9 through his counselor or other staff member. On October 1, 2018, Ingram resubmitted his complaint. On October 23, 2018, FCI's warden, Matthew Marske, responded by reiterating FCI-Oxford's policy about over-the-counter medication and stating that a review of Ingram's commissary purchase showed that he "did not purchase any stool softeners during this time period." *Id.* at 2.

Ingram appealed Marske's response by submitting a BP-10 to the regional office. According to Ingram and another BOP inmate, Jermaine Smith-Williams, who says he watched Ingram submit the grievance, Ingram put the BP-10 in the mail on November 1. *See* Dkt. 41,

4

¶ 16 (Ingram declaration) and Dkt. 42, ¶ 4 (Williams-Smith declaration). But BOP records say that the regional office didn't receive the form until November 15. On November 23, the regional office rejected the appeal as untimely because it was received more than 20 days after Marke's signed response. The regional office gave Ingram ten days to provide verification in the form of a memorandum on BOP letterhead that the untimeliness was not his fault.[2] Ingram did not do so. Instead, on January 4, 2019, Ingram submitted another appeal of Marske's response to the regional office. The regional office rejected the appeal because Ingram had failed to provide the previously requested memorandum indicating that the initial appeal's untimeliness was not his fault.

On March 18, 2019, Ingram filed a grievance with the central office complaining that he had been denied due process in his attempts to submit his BP-10. *See* Dkt. 1-1, at 2. The central office rejected this appeal on the grounds that Ingram (1) hadn't signed the appeal form and (2) still hadn't provided the memorandum explaining why his initial appeal had been untimely. The central office informed Ingram that if he had a memorandum justifying his prior untimely submission, he should submit it to the regional office. Ultimately, Ingram didn't submit that memorandum or any further grievance documents regarding his claims in this case prior to filing this lawsuit on May 28, 2019.

---

[2] Defendants don't explain the source of this practice of soliciting explanations for untimeliness on BOP letterhead, but it appears to be an established policy within the BOP. *See, e.g., Armstrong v. Bailey*, No. 214CV333JMSDKL, 2016 WL 7475718, at *2 (S.D. Ind. Dec. 28, 2016); *Jamal v. Garrett*, No. 09-1421, 2010 WL 4722503, at *3 (C.D. Ill. Nov. 15, 2010); *Singletary v. Reed*, No. 06-C-323-C, 2006 WL 1896880 (W.D. Wis. July 7, 2006).

ANALYSIS

Defendants contend that Ingram's case must be dismissed because he failed to properly complete the administrative review process. Specifically, Ingram failed to (1) appeal Marske's October 23, 2018 decision within 20 days, as required under 28 C.F.R. § 542.15(a); or to (2) submit a memorandum on BOP letterhead explaining that the untimeliness was not his fault. In his opposition to defendants' motion, Ingram argues that officials at FCI-Oxford made the administrative process unavailable to him. An inmate "must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, --- U.S. ---, 136 S. Ct. 1850, 1858 (2016). An administrative scheme can be unavailable to a prisoner if, for example, the prison fails to accept or acknowledge a prisoner's grievances, or constructs an administrative scheme "so opaque that it becomes, practically speaking, incapable of use." *Id.* at 1859.

Ingram contends that the administrative process was unavailable to him for several reasons. First, Ingram says that contrary to what's shown by the BOP's records, he did in fact properly submit BP-8 forms along with his original BP-9s. Second, he notes that he was placed in the special housing unit between August 11, 2018 and October 20, 2018 with limited access to his property, so he had trouble procuring the necessary grievance forms. Third, he says that on October 17, 2018, Melissa Laufenberg, FCI-Oxford's health services administrator, twice came to his cell attempting to persuade Ingram not to continue with the administrative process. But whatever problems Ingram ran into while submitting grievances to the warden at the initial level, he managed to successfully complete that process, and the warden decided Ingram's complaint on the merits on October 23, 2018. What matters is what happened after that, when Ingram attempted to appeal to the regional office.

Ingram and another inmate, Jermaine Smith-Williams, say that Ingram dropped the BP-10 appealing Marske's response in the institution mail on November 1, 2018—well within the 20-day appeal deadline. But for some reason, the regional office didn't mark the grievance as received (and thus filed) until November 15—three days after the deadline.[3] But the BOP gave Ingram an opportunity to cure the apparently untimeliness of his appeal by submitting a memorandum on staff letterhead. Unfortunately for Ingram, the failure to take advantage of a procedure for seeking reconsideration of a grievance dismissed as untimely constitutes a failure to exhaust, even when there are unresolved questions about whether the grievance may have in fact been timely under the prison-mailbox rule. *See Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005) (regardless whether plaintiff's complaint was timely under the prison-mailbox rule, "[b]y failing to take advantage of the procedure offered . . . for reconsidering the grievance, Cannon failed to exhaust his administrative remedies").

Ingram concedes that he failed to submit a memorandum on BOP letterhead explaining that the untimeliness was not his fault. But Ingram says that he was prevented from doing so by FCI-Oxford staff. He asserts in his declaration that he "tr[ied] to receive a letterhead for weeks" but "wasn't able to get a letterhead from . . . staff." Dkt. 41, ¶ 17. But Ingram provides no details about which staff member he asked, when the requests were made, or what responses he received. What's more, the various documents that Ingram submitted to the BOP contesting

---

[3] This scenario might raise questions about how the BOP regulation deeming a form filed on the date of receipt would interact with the prison-mailbox rule, which deems an appeal filed when prisoner places it in the mail. The Court of Appeals for the Seventh Circuit recently held that the prison-mailbox rule applies to prisoners' administrative complaints under the Federal Tort Claims Act, *see Censke v. United States*, 947 F.3d 488, 492 (7th Cir. 2020), but it hasn't yet addressed whether the rule applies to administrative exhaustion of *Bivens* claims like Ingram's. But I don't have to resolve that question here, because the BOP gave Ingram the opportunity to explain the untimely receipt.

the dismissal of his appeal as untimely did not mention having been denied letterhead. *See, e.g.*, Dkt. 1-1, at 10 (December 24, 2018 letter to administrative remedy coordinator); *id.* at 5 (January 4, 2019 resubmitted appeal to regional office); *id.* at 2 (March 18, 2019 appeal to central office). "Rule 56 demands something more specific than the bald assertions of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." *Bordelon v. Bd. of Educ. of the City of Chicago*, 811 F.3d 984, 989 (7th Cir. 2016) (citation omitted). Ingram hasn't provided anything more than a bald assertion that he couldn't get the required letterhead, so he has not raised a genuine factual dispute about whether the administrative grievance process was unavailable to him.

Ingram's final argument is that the exhaustion requirement should be waived in his case. He cites *Washington v. Barr*, 925 F.3d 109 (2d. Cir. 2019), for the proposition that "[e]ven where exhaustion is seemingly mandated by statute or decisional law, the requirement is not absolute" and "may be unnecessary where it would be futile." 925 F.3d at 118. But that case arose under the Controlled Substances Act, not the PLRA. Cases interpreting the PLRA make clear that "[t]here is no futility exception" to its exhaustion requirement. *Perez*, 182 F.3d at 537. A prisoner must fully exhaust his claims, even when he is certain that the institution will afford him no relief.

Defendants have met their burden of demonstrating Ingram's failure to exhaust, so I will grant the summary judgment motion and dismiss Ingram's Eighth Amendment claims. That dismissal will be without prejudice. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (dismissal for failure to exhaust is always without prejudice). That said, Ingram likely will not be able to exhaust his claims against the defendants in this case because any future grievances

8

would be untimely. The dismissal of this case moots Ingram's motion that I order FCI-Oxford to grant him access to his jailhouse lawyer.

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment for failure to exhaust administrative remedies, Dkt. 35, is GRANTED.

2. This case is DISMISSED without prejudice for plaintiff Ingram's failure to exhaust his administrative remedies. The clerk of court is directed to enter judgment for the defendants and close the case.

3. Plaintiff Milton Ingram's motion for an order directing FCI-Oxford to grant him access to his jailhouse lawyer, Dkt. 43, is DENIED as moot.

Entered July 23, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge